# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed:  May 21, 2019

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| ERIC REED and JEANNA REED, as | \* | |
| Parents and Natural Guardians of I.R., | \* | |
| A Minor, | \* | UNPUBLISHED |
| | \* | |
| Petitioners, | \* | Case 08-650V |
| | \* | |
| v. | \* | Chief Special Master Dorsey |
| | \* | |
| SECRETARY OF HEALTH | \* | Reasonable Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | \* | Excessive and Duplicative Billing; |
| | \* | Administrative Tasks; Expert Costs; |
| Respondent. | \* | Travel Costs. |

\* \* \* \* \* \* \* \* \* \* \* \* \*

Anne Carrion Toale, Maglio Christopher & Toale, Sarasota, Florida, for petitioners.
Ryan Daniel Pyles, United States Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On September 15, 2008, Eric Reed and Jeanna Reed ("petitioners"), parents and guardians of I.R., a minor, filed a Short-Form Autism Petition for Compensation under the National Vaccine Injury Compensation Program ("the Program").[2]  The case was included among the pending claims in the Court's Omnibus Autism Proceeding ("OAP").[3]  At the

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. ("Vaccine Act" or "the Act").  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

[3] The Omnibus Autism Proceeding consisted of a large group of petitions alleging that certain childhood vaccinations cause or contribute to the development of a serious neurodevelopmental disorder known as "autism spectrum disorder" or "autism."  For complete information

conclusion of the OAP test cases, petitioners filed an amended petition alleging that the combined measles, mumps, rubella, and varicella ("MMRV" or "ProQuad") vaccine that I.R. received at 12 months on December 30, 2005, caused I.R. to "suffer from immunodeficiency disorder, bowel disease, pathological neuroinflammation, seizure disorder, mitochondrial disease, and the resulting features of autism spectrum disorder ('ASD')."  Amended ("Am.") Petition dated Feb. 6, 2012, at ¶ 34 (ECF No. 16).  Petitioners subsequently filed a second amended petition alleging that I.R. "suffered a significant aggravation of a preexisting condition, a mitochondrial disorder, causally related to the ProQuad vaccine administered on December 30, 2005," which in turn caused I.R. to "suffer from immunodeficiency disorder, bowel disease, pathological neuroinflammation, seizure disorder, mitochondrial dysfunction and the resulting features of autism spectrum disorder."  Second Am. Petition dated Mar. 16, 2015, at ¶¶ 43-44 (ECF No. 85).  On December 4, 2018, the undersigned issued a decision finding that petitioners were not entitled to compensation.  Decision (ECF No. 199).

On January 16, 2019, petitioners filed a motion for attorneys' fees and costs, requesting compensation for the attorneys and paralegals who worked on their case.  Petitioners' Motion ("Pet. Mot.") dated Jan. 16, 2019 (ECF No. 203).  Petitioners' request, divided between three separate law firms, can be summarized as follows:

**Maglio Christopher & Toale**
- Fees – $518,617.20
- Costs – $127,250.86

**Conway Homer**
- Fees – $142,406.00
- Costs – $850.52

**Law Office of Sylvia Chin-Caplan**
- Fees – $3,158.90
- Cost – $0

**Petitioners**
- Costs – $2,373.00

Petitioners thus request $664,182.10 in fees and $130,474.38 in costs, for a total of $794,656.48.[4]  Respondent filed his response on January 28, 2019, indicating that he did not

---

concerning the autism proceedings, please see www.uscfc.uscourts.gov/omnibus-autism-proceeding.

[4] Petitioners have already received $250,000.00 in attorneys' fees and costs pursuant to an interim decision based on the parties' stipulation.  See Decision on Interim Attorneys' Fees & Costs dated July 29, 2016 (ECF No. 171).  Per this stipulation, the parties agreed that "the interim amount of $250,000.00 will be deducted from the final award of attorneys' fees and costs issued at the conclusion of this case."  Id. at 2.

oppose petitioners' motion because he believed the statutory requirement for attorneys' fees had been met in the instant case.

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned GRANTS petitioners' motion in part and awards **$500,171.60** in attorneys' fees and costs.

## I.    Discussion

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. at §15(e)(1).

### A.    Reasonable Attorneys' Fees[5]

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing the petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (2009).

A special master need not engage in a line-by-line analysis of petitioners' fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Wasson v. Sec'y of Health &

---

[5] Although three different firms seek fees in this matter, the undersigned will evaluate the fees as a combined whole.

<u>Human Servs.</u>, 24 Cl. Ct. 482, 484 (Fed. Cl. Nov. 19, 1991) <u>rev'd</u> on other grounds and <u>aff'd</u> in relevant part, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  <u>Saxton</u>, 3 F.3d at 1521.

### i.    Reasonable Hourly Rates

Petitioners request the following hourly rates for the attorneys and paralegals who worked on this matter:

Anne C. Toale – Attorney
- 2008-2010: $275.00
- 2011-2015: $300.00
- 2016: $367.00
- 2017: $378.00
- 2018: $402.00
- 2019: $420.00

Diana Stadelnikas – Attorney
- 2010: $275.00

Isaiah Kalinowski – Attorney
- 2015: $361.00

Amber Wilson – Attorney
- 2015: $295.00
- 2016: $275.00
- 2017: $290.00
- 2018: $308.00

Cecelia Stultz – Attorney
- 2017: $250.00

Sylvia Chin-Caplan – Attorney
- 2015-2016: $400.00
- 2017: $414.00
- 2018: $429.00

Paralegals (Maglio Christopher & Toale)
- 2008-2009: $75.00-$95.00
- 2010: $75.00-$135.00
- 2011: $105.00-$135.00
- 2012-2014: $95.00-$135.00
- 2015-2016: $95.00-$145.00

- 2017: $145.00
- 2018: $148.00
- 2019: $154.00

Paralegals (Conway Homer)
- 2015-2016: $135.00
- 2019: $142.00

These attorneys practice in Boston, Massachusetts; Sarasota, Florida; and Washington, DC.  Thus, forum rates apply.

The requested hourly rates require two reductions.  First, although Mr. Kalinowski seeks a rate of $361.00 for 2015, his years of experience at the time only allow a rate of $341.00.  See Robinson v. Sec'y of Health & Human Servs., No. 15-967V, 2018 WL 5629850, at *2 (Fed. Cl. Spec. Mstr. Sept. 12, 2018) (discussing the appropriate rate for Mr. Kalinowski); Stewart v. Sec'y of Health & Human Servs., No. 12-776V, 2017 WL 2807955 (Fed. Cl. Spec. Mstr. May 30, 2015) (awarding Mr. Kalinowski an hourly rate of $341.00 for 2015).  Because Mr. Kalinowski billed 5.9 hours for his work in 2015, this change results in a reduction of **$118.00**.[6]

Similarly, the undersigned must reduce Ms. Wilson's hourly rate for 2015.  Ms. Wilson billed at a rate of $295.00 for 2015, but her years of experience at the time only allow a rate of $225.00.  See Sewell v. Sec'y of Health & Human Servs., No. 12-124V, 2017 WL 6206208, at *2 (Fed. Cl. Spec. Mstr. Nov. 13, 2017) (reducing Ms. Wilson's hourly rate for 2015 to $225.00); Anthony v. Sec'y of Health & Human Servs., No. 15-636V, 2017 WL 4898932, at *2 (Fed. Cl. Spec. Mstr. Oct. 6, 2017) (also reducing Ms. Wilson's hourly rate for 2015 to $225.00).  Ms. Wilson billed 111.4 hours for her work in 2015, and so this change results in a reduction of **$7,798.00**.[7]

The undersigned finds that the remainder of the requested rates are reasonable and in accordance with the guidelines set forth in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  These rates also align with what other special masters have approved for these firms in the past.  See, e.g., Dawsonia v. Sec'y of Health & Human Servs., No. 15-1476V, 2019 WL 582543 (Fed. Cl. Spec. Mstr. Jan. 17, 2019); Crespo v. Sec'y of Health & Human Servs., No. 15-1100V, 2018 WL 3991263 (Fed. Cl. Spec. Mstr. July 5, 2018); Bougie v. Sec'y of Health & Human Servs., No. 08-102V, 2009 WL 982650 (Fed. Cl. Spec. Mstr. Mar. 23, 2009).  Therefore, the undersigned will award the rates requested.

---

[6] The reduction is calculated as follows: 5.9 hours x $20.00 = $118.00.

[7] The reduction is calculated as follows: 111.4 hours x $70.00 = $7,798.00.

### ii.    Reduction of Billable Hours

While petitioners are entitled to an award of attorneys' fees and costs, the undersigned has determined that a reduction in the number of hours billed by petitioners' counsel is appropriate.

The undersigned and her fellow special masters have previously emphasized the inefficiency that results when multiple attorneys work on one case.  See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 214-15 (2009) (affirming a special master's reduction of fees for overstaffing where three attorneys from two different firms worked on the same case); Van Vessem v. Sec'y of Health & Human Servs., No. 11-132V, 2018 WL 3989517, at *7 (Fed. Cl. Spec. Mstr. July 3, 2018) (finding that "it is not reasonable for both an attorney and a paralegal to bill for reviewing each filing in the case").  Such inefficiency is evident in this case. Over the course of this litigation, 6 attorneys and 15 paralegals have billed their time.  See generally Pet. Exs. A-B, E-F.  As a result, the firms billed considerable time for inter-office meetings, intra-office meetings, and other inefficiencies.  See, e.g., Pet. Ex. A at 4 (both attorney and paralegal billing time for reviewing notice of appearance); Pet. Ex. A at 7 (both attorney and paralegal billing time for reviewing the same electronic notice); Pet. Ex. E at 3-18 (Ms. Chin-Caplan billing time for "phone call w/[Anne Toale] re hrg," "draft email with [Anne Toale]," and similar communications).

The undersigned also observed a number of entries related to administrative tasks.  See, e.g., Pet. Ex. A at 1 ("Enter monthly costs into QuickBooks"); 3 ("[D]raft check for filing fee"); 4 ("Review payment to Mediconnect"); 6 ("Review invoice from Mediconnect").  Billing for administrative tasks, even at a paralegal rate, is not permitted.  Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); see also Mostovoy v. Sec'y of Health & Human Servs., No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing "reviewing invoices, setting up meetings, and making travel arrangements" as examples of administrative tasks).

For these reasons, the undersigned will decrease the requested attorneys' fees by 5%. Petitioners are thus entitled to attorneys' fees of $623,056.99.[8]

## B.    Costs

### i.    Attorneys' Costs – Maglio Christopher & Toale

For the firm of Maglio Christopher & Toale, petitioners request a total of $127,250.86 in attorneys' costs, described more thoroughly below.[9]

---

[8] The reduction is calculated as follows: $664,182.10 x 0.05 = $33,209.11.

[9] Receipts were not provided for some of petitioners' claimed costs, including certain medical literature requests and travel expenses.  See Order dated Apr. 9, 2019 (ECF No. 207).  The undersigned is generally unwilling to reimburse expenses for which receipts are not provided,

### a.    Expert Fees

### 1.    Dr. Andrew Zimmerman, M.D.

Petitioners request $19,750.00 for work performed by Dr. Zimmerman – 27.5 hours, billed at an hourly rate of $600.00, and 13 hours of travel, billed at an hourly rate of $250.00. Pet. Ex. C at 49, 51; Pet. Ex. D at 39.  Dr. Zimmerman both submitted expert reports and testified at the hearing.  See Decision at 29-30; Pet. Exs. 32, 34.

While the undersigned does not per se reject an hourly expert rate of $600.00, she notes that the rate is considered quite high in the Vaccine Program.  See Green v. Sec'y of Health & Human Servs., No. 15-1447V, 2017 WL 6336776, at *4 (Fed. Cl. Spec. Mstr Nov. 16, 2017); Rosof v. Sec'y of Health & Human Servs., No. 14-766V, 2017 WL 1649802, at *4 (Fed. Cl. Spec. Mstr. Mar. 31, 2017) ("[I]n the Vaccine Program, even the payment of $500.00 per hour is rare.").  Dr. Zimmerman's CV demonstrates that he is qualified to opine on the matters at issue here, but petitioners have not submitted documentation that would justify such a high rate.  See Nwala v. Sec'y of Health & Human Servs., No. 16-923V, 2019 U.S. Claims LEXIS 477, at *7-10 (Fed. Cl. Spec. Mstr. Apr. 12, 2019).[10]  The undersigned therefore will reduce Dr. Zimmerman's hourly rate to $500.00, awarding a total of $17,00.00 for his services.[11]

### 2.    Dr. Dmitriy Niyazov, M.D.

Petitioners request $67,600.00 for work performed by Dr. Niyazov – 161 hours, billed at an hourly rate of $400.00, and 16 hours of travel, billed at an hourly rate of $200.00.  Pet. Ex. C at 64, 68, 79, 109; Pet. Ex. D at 55, 94.  Dr. Niyazov authored two expert reports and testified at the hearing.  See Decision at 26-27; Pet. Exs. 39, 210.  Based on the quality of Dr. Niyazov's work, as well as the complexity of this litigation, the undersigned will award the full amount requested for his services.

---

and she is unlikely to do so in the future.  However, in light of the unusually long duration of this litigation, as well as the thorough explanations provided by petitioners for each of these expenses, the undersigned will reward them in full.  See Pet. Response dated Apr. 15, 2019 (ECF No. 209); Pet. Exs. C-D (providing dates, and often invoice numbers, for the expenses that lacked receipts).

[10] Specifically, the special master in Nwala awarded a $650.00 hourly rate based in part on the fact that (1) the expert demonstrated that he typically charged $750.00 per hour for his services; (2) the expert boasted particularly "impressive credentials," such as his board certification in both Neurology/Psychiatry and Ophthalmology; and (3) the expert's reports prompted resolution not only in Nwala, but in three related cases.  2019 U.S. Claims LEXIS 477, at *7-9.

[11] The reduction is calculated as follows: 27.5 hours x $100.00 = $2,750.00.  Because Dr. Zimmerman billed his travel time at an hourly rate of only $250.00, the undersigned awards the full $3,250.00 requested for travel, resulting in a total fee of $17,000.00.

### 3.      Dr. Ashley Freuler, Ph.D.

Petitioners request $600.00 for work performed by Dr. Freuler – 7.5 hours, billed at an hourly rate of $80.00.  Pet. Ex. C at 107.  Although Dr. Freuler was unable to testify at the hearing, she produced an expert report that evaluated I.R.'s behavior using retrospective video analysis ("RVA").  See Decision at 19, 38; Pet. Ex. 145.  The undersigned finds the requested fee reasonable in light of Dr. Freuler's experience and work product, and she awards it in full.

### 4.      Dr. Andrea L. Gropman, M.D.

Petitioners request $3,900.00 for work performed by Dr. Gropman – 9.75 hours, billed at an hourly rate of $400.00.  Pet. Ex. D at 5-6.  Dr. Gropman did not testify at the hearing, nor did she author an expert report.  Petitioners explain: "Dr. Gropman, a neurogeneticist, reviewed the file, performed research and conferred with counsel but was ultimately not able to support the case.  Therefore, her services would be considered that of a consultant."  Pet. Response dated Apr. 4, 2015 (ECF No. 209); see also Pet. Ex. 211 (Dr. Gropman's CV).  Having reviewed Dr. Gropman's credentials, the undersigned finds the requested fee reasonable and will reimburse it in full.

### 5.      Dr. Kaitlyn Wilson, Ph.D.

Petitioners request $7,550.00 for work performed by Dr. Wilson – 37.75 hours, billed at an hourly rate of $200.00.  Pet. Ex. D at 69.  After Dr. Freuler became unavailable, Dr. Wilson served as petitioners' RVA expert, submitting expert reports and testifying during the hearing.  See Decision at 28; Pet. Exs. 176, 198.  The undersigned finds the requested fee reasonable, and she will reward it in full.

### b.      Office Supplies

Petitioners request $579.77 for office supplies, including binders, CDs, and notepads.  Pet. Ex. C at 5, 172; Pet. Ex. D at 88.  Normal overhead costs like office supplies, however, are not compensable by the program.  See Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407 (1997) (disallowing costs for binders, bonded carbon and ribbon, and facsimiles); J.M. v. Sec'y of Health & Human Servs., No. 02-10V, 2018 WL 1514433, at *19 (Fed. Cl. Spec. Mstr. Feb. 13, 2018) (disallowing costs for post-it notes, writing tablets, and pens); Lamar v. Sec'y of Health & Human Servs., No. 99-584V, 2008 U.S. Claims LEXIS 442, at *57 (Fed. Cl. Spec. Mstr. July 30, 2008) (disallowing costs for CDs, CD cases, and labels).  Thus, the undersigned will not reimburse them here.

### c.      Travel

Although she finds petitioners' claimed travel costs generally reasonable, the undersigned notes that at least one of the meal receipts include alcoholic beverages.  See Pet. Ex. C at 181.  Because "[t]he cost of alcoholic beverages is not reimbursable by the Program, the undersigned will reduce the meal costs by $30.00, the amount spent on the beverages.  See Reginelli v. Sec'y

of Health & Human Servs., No. 14-972V, 2016 U.S. Claims LEXIS 221 at *8 (Fed. Cl. Spec. Mstr. Mar. 1, 2016).

### d.      Other Costs

Petitioners have also requested compensation for a variety of other costs, including medical records requests, medical literature, legal research, and printing.  Pet. Exs. C-D. Because these costs are reasonable and generally well-documented, the undersigned will reward them in full.

### ii.      Attorneys' Costs – Conway Homer

For the firm of Conway Homer, petitioners request a total of $850.52 in attorneys' costs. Pet. Ex. E at 19-29.  These costs include medical literature, postage, and travel expenses.  The undersigned finds these costs reasonable and well-documented, and she will reimburse them in full.

### iii.      Petitioners' Costs

Petitioners also request $2,373.00 in petitioners' costs, which they incurred for flights, hotel stays, meals, and transportation during the hearing.  See Pet. Ex. G.  The undersigned finds these costs reasonable and well-documented, and she will award them in full.

## II.    Conclusion

Based on all of the above, the undersigned finds that it is reasonable to compensate petitioners and their counsel as follows:

**Attorneys' Fees**

| | |
|---|---|
| Requested Attorneys' Fees: | $ 664,182.10 |
| Reduction in Attorneys' Fees (Hourly Rate Reduction): | $ (7,916.00) |
| Reduction in Attorneys' Fees (5% Reduction): | $ (33,209.11) |
| Awarded Attorneys' Fees: | $ 623,056.99 |

**Costs – Maglio Christopher & Toale**

| | |
|---|---|
| Requested Attorneys' Costs: | $ 127,250.86 |
| Reduction in Attorneys' Costs (Expert Hourly Rate Reduction): | $ (2,750.00) |
| Reduction in Attorneys' Costs (Office Supplies): | $ (579.77) |
| Reduction in Attorneys' Costs (Alcohol): | $ (30.00) |
| Awarded Attorneys' Costs: | $ 123,891.09 |

**Costs – Conway Homer**

| | |
|---|---|
| Requested Attorneys' Costs for Conway Homer: | $ 850.52 |

9

Awarded Attorneys' Costs for Conway Homer:                    $ 850.52

**Costs – Petitioners**

Requested Costs:                                             $ 2,373.00
Awarded Costs:                                              $ 2,373.00

**Total Attorneys' Fees and Costs:**                  **$ 750,171.60**
**Deduction Pursuant to Interim Fee Decision:**       **$ (250,000.00)**
**Final Award of Attorneys' Fees and Costs:**         **$ 500,171.60**

**Accordingly, the undersigned awards:**

**A lump sum in the amount of $500,171.60, representing reimbursement for
reasonable attorneys' fees and costs, in the form of a check payable jointly to petitioners
and petitioners' counsel of record, Anne C. Toale.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of
Court **SHALL ENTER JUDGMENT** in accordance with this decision.[12]

**IT IS SO ORDERED.**

<u>**/s/ Nora Beth Dorsey**</u>
Nora Beth Dorsey
Chief Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of
notice renouncing the right to seek review.